FILED
Dec 23, 2025
12:03 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT NASHVILLE**

| | |
|---|---|
| **CANDICE CLENDENING,** ) | **Docket No. 2025-60-5156** |
| Employee, ) | |
| v. ) | |
| **NASHVILLE READY MIX,** ) | **State File No. 88744-2024** |
| Employer, ) | |
| And ) | |
| **BITUMINOUS CASUALTY CORP.,** ) | **Judge Joshua D. Baker** |
| Carrier. ) | |

---

### EXPEDITED HEARING ORDER GRANTING BENEFITS

---

At a December 16, 2025 expedited hearing, Ms. Clendening requested a panel of psychiatrists for treatment of a mental injury caused by a rollover crash in a cement mixer. Because she is likely to prove a compensable mental injury at trial, the Court holds she is entitled to a panel of psychiatrists for treatment.

### Claim History

On December 14, 2024, Ms. Clendening was driving a cement-mixer truck downhill when her brakes failed. As her truck accelerated from gravity's pull, she saw a stop sign and cross-traffic but could not stop or even slow her vehicle. It gained speed, went through the stop sign without hitting another vehicle, but then hit a ditch and rolled onto its left side, trapping her. She recalled fearing that the vehicle would catch fire at any moment, until finally, firefighters arrived and removed the windshield to pull her out.

Physically, she reported pain radiating from her neck into her left arm with numbness and tingling, especially in her left hand. She selected orthopedic surgeon Dr. Keith Douglas from a panel, and he began treating her left arm a couple of weeks after her accident.

1

Two months later, Dr. Douglas directly referred Ms. Clendening to psychiatrist Dr. Keith Caruso to "address her anxiety and sleep issues" and "determine if mental health issues are related to the accident."

Dr. Caruso evaluated Ms. Clendening and diagnosed post-traumatic stress disorder and major depressive disorder caused by the work accident. He recommended "medication management by a psychiatrist" and psychotherapy. He also restricted her from driving cement trucks "until she is able to tolerate doing so without exacerbation of her symptoms, which may present as flashbacks, panic attacks, severe anxiety and crying spells." He stated his treatment recommendations were reasonable and necessary to treat her work injury and noted, "Ms. Clendening ha[s] never been in psychotherapy or psychiatric treatment previously." However, Dr. Caruso specifically stated in his report that he would not treat Ms. Clendening.

After Dr. Douglas referred her for psychiatric treatment, Ms. Clendening testified she did not return to Dr. Douglas for treatment of her physical injuries. On June 6, after missing two appointments, Dr. Douglas released Ms. Clendening from care and wrote, "The patient was placed at maximum medical improvement due to her repeated missed appointments and failure to attend today's scheduled visit."

Meanwhile, Nashville Ready Mix declined to authorize psychiatric treatment or offer a panel of psychiatrists, claiming Dr. Douglas disagreed with Dr. Caruso and was not recommending any psychiatric treatment.

Ms. Clendening's counsel sent Dr. Douglas a questionnaire, and he responded *yes* to the question, "[D]o you defer to Dr. Caruso's expertise in mental health disorders in regard to diagnoses, causation, and medical necessity of treatment for Ms. Clendening's mental health disorders and recommended treatment?"

A month later, Dr. Douglas addressed medical causation of Ms. Clendening's mental injury. He reported Ms. Clendening "present[ed] for follow-up care related to her left hand." However, the record noted no treatment plan or orthopedic treatment, nor did it reference any examination or interview of Ms. Clendening. Rather, the doctor simply wrote:

> There was prior concern regarding whether [Ms. Clendening's] underlying psychological and psychiatric conditions were related to her injury or preexisting. It is my opinion that greater than fifty percent of her psychiatric and psychological conditions were preexisting and therefore not work-related.

Ms. Clendening testified she did not attend the appointment with Dr. Douglas as reported in her medical record. She said she had no preexisting mental-health condition

and had never attributed her mental-health symptoms to anything other than her work accident.

A business day or two before the hearing, Nashville Ready Mix filed a referral order from Dr. Douglas to psychologist Dr. Megan Avery in Memphis. It read, "Referrals: Psychiatry. Consult" with "Dr. Megan Avery." The parties agreed at the hearing that Dr. Avery is a psychologist, not a psychiatrist, and that she practices in Memphis, more than 200 miles from Ms. Clendening.

At trial, the parties agreed Dr. Douglas is an authorized physician and that Ms. Clendening suffered a work-related mental-health condition.

However, Nashville Ready Mix argued Ms. Clendening is not entitled to a panel of psychiatrists because Dr. Douglas, as the claim's "gatekeeper," has not referred her for psychiatric treatment. Instead, she must accept authorized treatment from psychologist Dr. Avery based on Dr. Douglas's most recent referral for a "consult."

For her part, Ms. Clendening contended the "consult" referral to a psychologist represents no guarantee of treatment, as it is identical to her referral to Dr. Caruso, which yielded no treatment. Moreover, Dr. Avery, as a psychologist, cannot decide medical causation or permanency. *Cigna Prop. and Cas. Ins. Co. v. Sneed*, 772 S.W.2d 422 (Tenn. 1989). Nor can Dr. Avery prescribe and manage medication that Dr. Caruso, a psychiatrist, said she needs.

She declined the consult referral to Dr. Avery and urged the Court to accept Dr. Caruso's opinion over Dr. Douglas's and order a panel of psychiatrists for treatment. She argued that Dr. Douglas's causation opinion is not credible. Most notably, he lacks psychiatric expertise. But also, he incorrectly attributed her condition to a preexisting mental illness though none exists. Further, he did not interview or examine her to evaluate her mental health, as she was not present at the appointment. Instead, he documented that she was present when she was not.

### Findings of Fact and Conclusions of Law

Ms. Clendening must prove she is likely to prevail at a final hearing on her requested benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2025). She requested a panel of psychiatrists for treatment. The Court holds Nashville Ready Mix must provide her a panel.

Like Ms. Clendening's cement truck, her claim's process functioned well until it faltered. Dr. Douglas appropriately referred Ms. Clendening to a specialist for a causation evaluation under subdivision 50-6-204(a)(3)(A)(ii). Nashville Ready Mix appropriately authorized that referral.

3

However, the Court disagrees with Nashville Ready Mix that an order for psychiatric treatment from an authorized physician under Tennessee Code Annotated section 50-6-204 is necessary for a panel of psychiatrists under these circumstances. Following that argument to its logical conclusion, Dr. Douglas would not be gatekeeper: he would be sole and final arbiter—the claim's captor rather than its safeguard.

Instead, the Court reads the terms of subdivision (a)(3)(A)(ii) as representing guardrails for an accepted claim instead of grounds for denial. By relying on Dr. Douglas's opinion to deny psychiatric treatment instead of accepting Dr. Caruso's opinion, Nashville Ready Mix denied the compensability of Ms. Clendening's claim for a mental injury, derailing her authorized treatment.

Put simply, whether Dr. Douglas referred Ms. Clendening for consultation or for treatment, and whether he agrees with the specialist is immaterial, where Dr. Caruso, as the authorized referral specialist, determined medical causation and recommended treatment.

In other words, when faced with Dr. Caruso's opinion, Nashville Ready Mix had two choices in an accepted claim: authorize treatment with Dr. Caruso, if he were willing to treat Ms. Clendening; or offer her a panel of psychiatrists. It did neither, harnessing Dr. Douglas's alternative opinion instead to foreclose and prevent psychiatric treatment.

Consequently, the Court must weigh the doctors' opinions to determine if Ms. Clendening is likely to prevail at trial by proving she suffered a mental injury that requires psychiatric treatment.

With conflicting medical opinions, the Court "must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

When one of those experts is an authorized treating physician, that expert's opinion has a presumption of correctness on the issue of causation. Tenn. Code Ann. § 50-6-102(12)(E). Further, "any treatment recommended by a physician or chiropractor selected [under] subdivision (a)(3) *or by referral, if applicable*, shall be presumed to be medically necessary for treatment of the injured employee." *Id.* § 50-6-204(a)(3)(H) (emphasis added).

Considering the first factor, Dr. Caruso's qualifications as a psychiatrist significantly outweigh Dr. Douglas's qualifications in diagnosing and treating psychiatric conditions.

4

Next, the circumstances of the doctors' evaluations also favor Dr. Caruso, as he thoroughly interviewed and examined Ms. Clendening and issued a lengthy and detailed report. Conversely, Dr. Douglas never examined Ms. Clendening for a mental health condition. While identifying her as present when she was absent from an examination could have resulted from an auto-populated template, it is still a mistake that casts doubt on the reliability of his opinion.

About the information available to the experts, this factor also favors Dr. Caruso because he thoroughly interviewed and examined Ms. Clendening to obtain relevant and necessary information. By contrast, Dr. Douglas only had information about Ms. Clendening's physical injury. Further, his opinion lacked a factual foundation, as he incorrectly attributed her symptoms to a preexisting condition that did not exist.

In Workers' Compensation Law, a mental injury is defined as "a loss of mental faculties or a mental or behavioral disorder, arising primarily out of a compensable physical injury or an identifiable work[-]related event resulting in a sudden or unusual stimulus[.]" *Nickerson v. Knox Cnty.*, No. E2020-01286-SC-R3-WC, 2021 Tenn. LEXIS 24 (Tenn. Workers' Comp. Panel June 8, 2021).

Although Ms. Clendening suffered a relatively minor physical injury compared to what could have happened, she described the stuff of nightmares: losing brakes downhill headed into cross-traffic, becoming trapped after a rollover crash, and fearing explosion at any moment. The Court reasonably assumes that she felt sudden and overwhelming fear for her life and for the lives and safety of others.

Considering the definition of a mental injury and the relevant factors for weighing the doctors' opinions, Dr. Caruso's opinion is more reliable, credible, and persuasive, and it overcomes by a preponderance of evidence the presumption of correctness afforded to Dr. Douglas, Ms. Clendening's authorized orthopedist.

For these reasons, the Court holds Ms. Clendening is likely to prevail at a final hearing in proving she is entitled to a panel of psychiatrists for the treatment Dr. Caruso has recommended for her work-related mental injury.

IT IS ORDERED:

1. Nashville Ready Mix shall offer a panel of psychiatrists for treatment.

2. A status hearing is set for **Tuesday, March 10, 2026, at 10:30 a.m. Central Time.** The parties must call 615-741-2113 or 855-874-0474 to participate.

3. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED December 23, 2025.**

_____

**JUDGE JOSHUA D. BAKER**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits
1. Medical records filed by Candice Clendening
2. Medical records filed by Nashville Ready Mix
3. Rule 72 declaration of Candice Clendening
4. First Report of Injury forms
5. Referral to Dr. Megan Avery signed by Dr. Douglas and dated December 12, 2025

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on December 23, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Nadine Martin, Employee's attorney | | | X | nadine@reasonoverlaw.com |
| Chris Brown, Employer's attorney | | | X | Chris.brown@leitnerfirm.com |

_____

**PENNY SHRUM**
**Clerk, Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*